Our last case this morning for oral argument is appeal number 25-1915 Bement v. United Airlines. Mr. Green is appearing remotely. Mr. Green can you hear me okay? Actually, it's John Pierce. I'm appearing today, Your Honor. Can you hear me okay, Mr. Pierce? Yes, Your Honor, loud and clear. You may proceed whenever you're ready. Thank you, Your Honor, and may it please the court. This appeal concerns whether the proposed amended complaint states plausible claims for religious discrimination and retaliation under Title VII and the applicable Florida parallel law and whether the district court correctly denied amendment under Runyon. When the proper Rule 12 standards are applied, the proposed amended complaint clears the plausibility threshold and the denial of amendment was improper. Beginning with the discrimination claims, the Seventh Circuit's decisions in IDA and Passerella set a modest pleading standard. A plaintiff must allege a sincerely held religious belief in a conflict with an employment requirement. The PAC does that and more. It alleges that Mr. Bement is a practicing Catholic, that he objects to vaccines connected to abortion. Mr. Pierce, you've spent quite a bit of time in your briefs on the sincerely held religious belief allegations in the complaint, but that issue is not before us on appeal. The district court's May 5th, 2025 opinion is what's before us, and I know in the March 3rd opinion, the district court addressed that, but the district court did not grant the 12b-6 in the May 5th opinion based on failure to properly allege a sincerely held religious belief. So, your time might be spent if you move on to the May 5th opinion. Yes, Your Honor. I believe in that opinion, the district court found the PAC deficient on the discrimination claims on two grounds. First, that the PAC did not allege that his religious beliefs were a motivating factor in United's denial, and second, that it did not allege the deadline used to reject his request was discriminatory or arbitrary, and we believe that both conclusions misapplied Rule 12 and conflicted with case law. On the first point, the PAC does allege that religion was a motivating factor. It alleges that he submitted a religious-based exemption request and that United denied them without engaging those beliefs at all. Can I ask you, Mr. Pierce, can I ask you, I'd understood this case to be arguing not, in essence, religious animus on the part of United Airlines, but rather, in essence, a failure to accommodate. Is that right? I believe that's essentially correct, Your Honor, in that United, you know, they set this deadline for August 31st for customer-facing employees. Yeah, well, one of the puzzles in this case is just what was the deadline and to whom did it apply and to whom was it communicated. Suppose, just for purposes of argument, that evidence in this case later shows up that the plaintiff, Bennett, did learn of this deadline, that it did apply to him and that he missed it. How does that affect your case? I think that would be, I think that would be a problem for our case, but those are, of course, those are, of course, two big ifs, and our contention at this point, at the pleading stage, is that the the allegations that set forth in the complaint need to be construed as, taken as true, and the inferences therefrom construed in our favor, and the the allegations of the complaint are clear that that the deadline did not apply to customer-facing, non-customer-facing employees, and that that's what Mr. Bevin was, and so the way that things played out were that the religious accommodation requests that were submitted beforehand were accepted and before that deadline were accepted and those afterward were flat-out denied without any attempt to inquire, any Mr. Bevin's, you know, specific religious beliefs and, and taking those into account, whether there were reasonable accommodations that United could have made that would not create an undue burden for them. Is Mr. Bevin, was he covered by a collective bargaining agreement in this position? Yes, he was. That's actually a separate lawsuit that we have filed against, that we have just a couple weeks ago in the same, in the same district. Okay. Mr. Pierce, do you mind if I back up just for a moment, really quickly? Sure. I want to make sure that I'm clear. Are you asserting a desperate treatment claim based on United's failure to accommodate his religious beliefs, or is your failure to accommodate claims standing alone? I want to make sure I answer the question correctly. They, United certainly didn't do anything to attempt to accommodate Mr. Bevin's religious beliefs. They, they didn't engage in any process to understand them or engage in any inquiry or analysis as to whether or not what could be a reasonable accommodation or, you know, what kind of burden that would place on the company. I think it's, it's our, I mean, it's our contention that, I believe it's our contention that, that United, you know, did, did discriminate against Mr. Bevin in terms of his religious beliefs because it used this purported deadline as such a, you know, such an arbitrary mechanism to get around having to even analyze the religious beliefs. Can I ask you about your retaliation claims? Yes, sir. I have the, his first EEOC inquiry was not actually a charge, was it? That's correct. So that's not the kind of thing that would have been routinely communicated to the employer. I have to say, I don't know what the EEOC, you know, processes are on that as to whether that is typically communicated. The EEOC does not have to tattle on every phone call or inquiry and call the employer every time somebody contacts them. They have to pass along formal charges. What I'm having trouble with here is given the allegations of the dates and the sequences is coming up with even a plausible story of United having been aware of any protected activity other than just the request for accommodation itself, which just circles back to the merits. So I'm having trouble seeing a retaliation claim here. Well, I think a couple things, Your Honor. You know, after that November 8th inquiry date, there was a, I guess you call it a fact-finding session on November 15th with Mr. Bement, a union representative, I believe, in that company. It remains to be seen in discovery, hopefully, what exactly was discussed at that meeting. There are no specific allegations in the complaint that that inquiry was discussed, but I don't know whether it was discussed, and I think it is entirely plausible that it was discussed. But that's not your complaint, and we're at the 12B6 stage, so that won't help you. Yeah, no, I mean, that is true, Your Honor. Now, after that meeting, and if Florida passed a law after that meeting, and Mr. Bement then submitted a submitted another religious exemption request on the Florida form, United, I believe it was on November 25th, and then on December 1st, that request was denied, and then immediately on that same day, Mr. Bement submitted a complaint to Florida, and then it was six days later, on December 7th, that United formally terminated Mr. Bement in a letter to him, and what we are contesting is that that temporal proximity of those events occurring is enough to raise a plausible claim for retaliation. Do you want to save the remainder of your time? Yes, Your Honor. Thank you very much. Thank you. Ms. Gower. Good morning, and may it please the Court. Shanti Gower on behalf of United Airlines. We ask the Court to affirm the District Court's denial of Mr. Bement's motion for leave to file an amended complaint. The District Court did not abuse its discretion in denying leave to amend on the grounds that the amendments would be futile. The amendment, the amended complaint allegations themselves confirm that United denied Bement's religious accommodation request because it was untimely, not because of his religion, and the amended complaint doesn't that require us to try to figure out whether there was a deadline communicated to him that applied to him. No, I don't think so, Your Honor, because the amended complaint allegations say that the amended, that the denial of the accommodation request was, quote, solely because it was untimely. Then he alleges multiple times that the accommodation request was, quote, simply denied for untimeliness, and that United immediately accommodated those who admitted timely religious accommodation requests, including those... It seems like you're asking us to ignore all of the points that counsel is making to the effect that this deadline did not apply to plaintiff Bement, and it was never communicated to him. So I'm not asking you to ignore it, I'm actually asking you to look at what the proposed amended complaint actually says, because with respect to his claim that the amendment did not apply to him because he was not a frontline employee, he actually contradicts himself in the proposed amended complaint, because he explicitly alleges that United immediately accommodated other employees who, like him, were not frontline employees, but who made timely religious accommodation requests. So those allegations confirm that the timeliness of the request, not his religion, was the deciding factor. And then with respect to his claim that he thought the deadline didn't apply to him, or he was unaware of the deadline, again, the proposed amended complaint does not allege that his ignorance of the deadline, or his mistaken belief about its applicability to him, was due to United's discrimination or animus against his religious beliefs. All he says is that he was told by a union official that the deadline didn't apply to him, but he doesn't say that United purposely hid it because of his religion. Yeah, I understood Mr. Pierce's response to my question to be that this is not, nobody's alleging that United is hostile to his religion or to his claim, but rather that this is a duty to accommodate that we ought to evaluate under Groff against Joy for whether there would be, in essence, whether it's a reasonable request for accommodation, whether there would be a hardship in complying with it, and that all, I mean, I understand your points, but this leaves me confused about what the relevant facts are, and that makes it hard to find there's no viable claim. If I'm understanding your question correctly, Judge Hamilton, I think the ultimate claim is, yes, that United failed to accommodate him, but in order to get to that ultimate question, he first has to establish that he had a right to be accommodated. In other words, that he had, he's asserted in his complaint that it was because of his religion, and I guess our point is he has not asserted that in his complaint because his allegations specifically confirmed that it was because of the timeliness. Well, and he's also arguing that it was arbitrary and that you didn't engage with him, and if we were doing all this under the Americans with Disabilities Act, frankly, it would be a little more familiar to me and probably to you in terms of process and deadlines and so on, but I understand, I understood the applicable law there to be pretty sort of a vague standard of reasonableness and expectation of good faith working together to accommodate a facially legitimate request. Yes, but there's actually nothing about Title VII or what he's entitled to in terms of a religious accommodation that prohibits United from setting a neutral deadline to submit accommodation requests. And would you agree, would you agree that it at least needs to be communicated effectively if it's going to be enforced? It was communicated effectively, Your Honor. You're telling me that I don't have that from the complaint, I don't have, I don't see how that gets resolved on 12b-6. It gets resolved, Your Honor, again simply because the complaint specifically alleges that he was told it was because it was not timely and that other people, including others in his same position who submitted religious accommodation requests, had them granted if those requests were submitted in a timely manner. So let's suppose, take all that as true, and suppose that somehow he missed the memo. He didn't get it. Are you still entitled to enforce it against him? Yes. Why? Yes, because everybody, every single employee at United was subject to the same neutral deadline, meaning even if, let's say he didn't even request a religious accommodation, he didn't submit anything, he would have been treated in the exact same manner as he was treated in that if he didn't get vaccinated or he didn't get an accommodation, he would have been terminated pursuant to United's policy. Even one that's not communicated to him? Yes, but it was communicated to him. That is a factual question that I, explain to me how we resolve that question on a 12b-6 motion. Yes, and perhaps, Your Honor, if the complaint had been drafted differently, I would agree with Your Honor's question on that, but the issue is from the specific allegations in the complaint where he says repeatedly, it was because I was, I submitted it untimely. It was because I didn't, they didn't immediately accommodate me because I didn't submit it by the deadline. That's what he keeps saying over and over and over. He's repeating what you all told him, and I don't see how that concedes either the factual question that it was communicated to him in a timely way or that it was reasonable to enforce it with, and I assume if you weren't entirely consistent in enforcing it, that would also be a potential problem for your defense. Absolutely, but there is no allegation that United did not. Okay, let's go, let's go back to the question of his knowledge of the deadline applying to him. How do we resolve that on a 12b-6 motion? You resolve it on a 12b-6 motion by looking at the specific allegations in the complaint. And which ones, which ones defeat him? Paragraph numbers, sure. It is in the proposed amended complaint, paragraph numbers 18, 27, 29, 38, 42, 51, 58, 62, and 74. Sorry, I'm, you're going too fast. I'm so sorry. I lost you after 38. After 38? After 38, okay. 42, 51, 58, 62, and 74. And which of those is your best? They're, they're repetitive allegations, but I would say if you look at 18, 27, 29, 38. 27, if I'm looking at the right document, it says throughout United stood firm in its illegal position that Bemant's request was untimely according to its internal company policy deadline that it did not disclose to Bemant. Yes, that Bemant's request was untimely, and if you look at 20. Pursuant to a policy that it did not disclose to Bemant. Correct, but if you, again, if you look at, for example, 29, the last sentence, further United's precedent under the policy on timely religious accommodation requests, especially for those employees who did not have customer-facing roles, was immediately to accommodate them. Right, and how does that amount to a confession on his part that he was informed in a timely way of the deadline that it applied to him? It, so it informs that because he's saying everybody who submitted the... This is written after the fact. He just said in 27, a policy deadline that it did not disclose to Bemant, and I'm, you're telling me that he made allegations in here that confessed the opposite of that, and I'm asking you to identify them for me. You've given us a list? Yes, so again, if you look at, for example, paragraph 38, he says that defendant responded to Bemant's continued religious objections to the policy and repeated attempts at resolution with a blanket denial and did not provide any lawful reason or rationale other than his request was untimely. Right. He continually says in each of these paragraphs that I had cited that his, he kept being told his request was untimely. Correct, after the deadline had passed, correct? Yes. Okay, I'm not sure that, I'm gonna ask it one more time and then I'll stop. Okay. Please point me to where he admitted he was told in a timely way, here's the deadline, it applies to you, and you have to meet this deadline to seek a religious accommodation. So he doesn't allege that he was told that, but he also doesn't allege that his ignorance of the deadline or his mistaken belief about its applicability to him was due to United's discrimination. The answer was no to my question, that he did not allege that, correct? The answer is no, correct, but we're, but I'm looking at the other allegations to inform my opinion and the district court's finding that he alleged repeatedly that it was denied due to timeliness, not due to his religion. So I understood your argument in, to be that nowhere, while he, while he may not admit that he was aware of the, of the guide, of the deadline, nowhere does he allege that the decision not to grant him a relief was based on his religious practice. He says I have a religious practice and that's why I wanted this, but they denied it solely for untimeliness, he will allege us that, but nowhere does he make that last connection that it was his religious practice or belief that is the basis on which they denied it. Yes, that's if he had another sentence in there that he, he might have enough, but he didn't have that. And that's why this is a failure to accommodate class case rather than a religious hostility case, correct? He's, but he still needs to show the religious hostility in order to, he needs to show a failure to accommodate. But you don't get to that until you show the motivation. I think they said that recently in Passerella. That's exactly right, yes. You don't get to that question unless he establishes it. Unless you make the, yeah, the prima facie, I don't think it's called prima facie, but unless you meet that initial standard. Correct. Okay. All right, thank you. Mr. Pierce, we'll give you a minute for rebuttal. Yes, Your Honor. I'll just, I don't have much, I'll just echo some of the questions that Judge Hamilton was, was asking. We don't, we don't deny that United consistently said after the fact that the, you know, that, that it was because of the deadline. But, but he is very clear, Mr. Beman, in the complaint that, again, that was not communicated to him. And so, you know, we believe that our 12B6 setting, that, that that's something that, you know, it can't be resolved as a matter of fact and that the inferences from these allegations should be construed in our favor. Thank you very much. Okay, thank you, Mr. Pierce. Thanks to both sides. The court will take the case under advisement and that concludes our oral arguments for this morning.